IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ███████ ████████ ████████ *Plaintiff,* vs. ZACHARY TRAYNOR, FRIENDFINDER NETWORKS, INC., VARIOUS, INC., *Defendants.* | § § § § § § § § § § § § § § | SA-19-CV-00727-XR FILED UNDER SEAL |

## SEALED REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Xavier Rodriguez:**

Before the Court in the above-styled cause of action is the *Pro Se* Motion of Eugene Volokh to Intervene and Unseal [#117], which was referred to the undersigned for disposition. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

The Circuit Courts of Appeals are divided on whether a motion to intervene is a dispositive motion for purposes of magistrate jurisdiction. *See N. Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 996 F.2d 21, 25 (2d Cir. 1993) (holding a motion to intervene is dispositive); *Day v. Persels & Associates, LLC*, 729 F.3d 1309, 1322 (11th Cir. 2013) (holding a motion to intervene is dispositive); *People Who Care v. Rockford Bd. of Educ.*, 171 F.3d 1083, 1089 (7th Cir. 1999) (holding a motion to intervene is not dispositive). The Fifth Circuit has not addressed the issue, and district courts in this Circuit are similarly split. *Compare Johnson v. Qualawash Holdings, LLC*, No. 2:12CV-0885-PM-KK, 2013 WL 3050021, at *2 (W.D. La. June 17, 2013) (motions to intervene are non-dispositive) *with Fisher v. Waste Mgmt. of Louisiana,*

1

*LLC*, No. 17-CV-00246-BAJ-RLB, 2019 WL 2713053, at *1 (M.D. La. June 28, 2019) (adopting "the sound reasoning" of the Eleventh Circuit holding that motions to intervene are dispositive). The undersigned will treat Professor Volokh's motion to intervene as a dispositive motion and therefore issue a report and recommendation for the District Court's review.

By his motion, Professor Eugene Volokh, a First Amendment scholar at UCLA School of Law, asks the Court to permit him to intervene for the purpose of asking the Court to vacate its sealing order and unseal various orders and filings in this case so that he can write about the temporary restraining order, the preliminary injunction, and the sealing of this case in law review articles and on his blog. Professor Volokh's motion indicates that Plaintiff opposes his motion; Defendant Traynor consents to the motion; and Defendants FriendFinder Networks, Inc., and Various, Inc., do not oppose the motion. Plaintiff has filed a response in opposition [#118]; Traynor has filed a response in support [#119]. Professor Volokh has filed a reply [#120]. The undersigned has considered these additional filings in issuing this recommendation. For the reasons that follow, the District Court should grant the motion to intervene. The undersigned will dismiss the motion to unseal without prejudice to refiling upon the District Court's final disposition of the intervention motion.

## I.  Background

This case was filed by Plaintiff ▬▬▬ ▬▬▬ ▬▬▬ against Defendant Zachary Traynor on June 17, 2019, asserting two related causes of action for invasion of privacy: (1) public disclosure of private facts, and (2) intrusion on Plaintiff's seclusion. (Compl. [#1], at ¶ 4.) Plaintiff alleges that Traynor sent an Instagram message to Plaintiff's 15-year-old daughter and her friends stating that Plaintiff, a married woman who has never been married to Traynor, had an abortion in May 2019. (*Id.*) Plaintiff further alleges that Traynor engaged in stalking activity

2

at a hotel where Plaintiff was staying in Houston, Texas, in June 2019 for a work trip, during which Traynor wrote an embarrassing message across the windshield of Plaintiff's vehicle. (*Id.*) Finally, Plaintiff's Compliant alleges that Traynor posted sexually explicit language and photos of Plaintiff on social media and threatened to post additional sexually explicit photos involving Plaintiff if she did not agree to engage in a personal relationship with him. (*Id.*)

The District Court entered a temporary restraining order on June 24, 2019, and then a preliminary injunction on July 8, 2019, enjoining Traynor from directly or indirectly contacting Plaintiff, her husband, or her children, and from stalking or posting any sexually explicit images of her. (TRO [#5]; Prelim. Inj. [#7].) That injunction remains in effect. After entering the preliminary injunction, on Plaintiff's motion, the District Court sealed all pleadings and filings in this case, which include sexually explicit images, texts, and messages, to protect the privacy interests of Plaintiff's minor daughter and family and to prevent the content of this case from becoming a vehicle for some improper purpose. (Sealing Order [#9].)

Plaintiff thereafter filed a First Amended Complaint, reasserting her privacy claims against Traynor and adding two additional Defendants—FriendFinder Networks, Inc., and Various, Inc.—entities operating online relationship networks and dealing in adult entertainment. (Am. Compl. [#10], at ¶ 5.) Plaintiff's Amended Complaint alleges that Traynor created a membership account with AdultFriendFinder.com ("AFF"), a website operated by Various, Inc., whose parent corporation is FriendFinder Networks, Inc. (collectively "FFN Defendants"), to create a membership page where he posted sexually graphic images of Plaintiff in June and July 2019. (*Id.* at ¶ 4.) Plaintiff claims she filed numerous written complaints with the FFN Defendants, informing them of the injunction against Traynor and demanding the images be

3

permanently removed.  (*Id.* at ¶ 5.)  According to Plaintiff, the FFN Defendants temporarily removed the photos but then reposted them a day or two after they were removed.  (*Id.*)

The FFN Defendants moved to compel arbitration of Plaintiff's privacy claims against them, and the Court granted the motion based on an arbitration agreement contained in the Terms of Use to which Plaintiff assented when she created a FFN profile after learning that Traynor had posted photos of her on the AFF site.  (Arbitration Order [#34].)  Plaintiff's claims against the FFN Defendants are currently stayed.

Plaintiff had difficulty locating and formally serving Traynor with this lawsuit, even though he had notice of its filing.  Traynor did not make an appearance in this case until January 9, 2020, after Plaintiff moved for contempt based on his alleged violation of the preliminary injunction.  The District Court held a contempt hearing on February 11, 2020, at which Traynor appeared, and the United States Marshals advised the Court that there was a pending felony warrant against Traynor in Wilson County, Texas, stemming from Plaintiff's allegations.  At the conclusion of the contempt hearing, the Court remanded Traynor to the U.S. Marshals pursuant to that warrant and stayed Plaintiff's claims against Traynor pending resolution of the criminal proceedings.  Traynor filed an Answer and Counterclaim against Plaintiff, asserting claims against Plaintiff for defamation and negligence and alleging that Plaintiff had given him a sexually transmitted disease.  (Answer and Counterclaim [#61].)

The criminal case resolved[1] in October 2021, and the District Court lifted the stay.  Traynor has twice moved to unseal court documents in this case.  The District Court denied his first motion via text order, citing the privacy interests of Plaintiff and her minor daughter.  The

---

[1] According to an advisory filed by Plaintiff [#95], Traynor pleaded guilty to a misdemeanor harassment charge, and the county court entered a deferred adjudication order and imposed 12 months of community service.

District Court referred the second motion to the undersigned, and the undersigned granted the motion in part so that Traynor himself could have access to all court documents filed in this case that had been accessible to the attorneys representing Plaintiff and the FFN Defendants but not Traynor as a *pro se* party.  The undersigned denied the motion as to Traynor's request to unseal court filings for public access.

Professor Volokh now asks the Court to permit him to intervene to request the unsealing of the filings in this case.  Professor Volokh discovered this case through a scheduled daily Westlaw query that finds all new opinions mentioning sealing or the First Amendment, the results of which included the above-described order partially granting the motion to unseal. Once aware of the case, Professor Volokh was able to access several other orders that were erroneously not sealed like the rest of the documents and filings in this case, despite the District Court's sealing order.  Through an internet search, Professor Volokh also discovered the Court's temporary restraining order, which is sealed but was saved and made accessible on CourtListener before sealing.  Professor Volokh believes he should be permitted to intervene in this case to assert the public's common law right of access to judicial records and his own personal First Amendment rights so that he can move to vacate the sealing order and write about this case on his blog and in law review articles.

## **II. Motion to Intervene**

The Court should grant Professor Volokh's motion to intervene.  Professor Volokh wishes to intervene for the limited purpose of moving to unseal judicial records in this case and assert the public's right of access to court records and his own personal First Amendment rights. *See S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (recognizing public's "common law right to inspect and copy judicial records"); *Doe v. Stegall*, 653 F.2d 180, 185 &

5

n.10 (5th. Cir. Unit A Aug. 1981) ("First Amendment guarantees are implicated" when a court decides to restrict public scrutiny of judicial proceedings and court records).

Rule 24 of the Federal Rules of Civil Procedure governs motions to intervene. The Fifth Circuit has recognized that "the procedurally correct course" for a nonparty to seek modification of a standing protective order or to have access to sealed documents is to obtain the status of intervenor through Rule 24. *See In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979). *See also San Jose Mercury News, Inc. v. U.S. Dist. Court N. Dist. (San Jose)*, 187 F.3d 1096, 1100 (9th Cir. 1999); *EEOC v. National Children's Center*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (recognizing that nonparties seeking access to documents and records under a protective order or under seal in a civil case may do so by a motion for intervention under Rule 24 and collecting cases holding same).

Where the claims in the main action have been dismissed and a case is closed, there is no longer a live controversy between the original parties and an intervenor must establish Article III standing in order to intervene. *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006). This threshold showing is not required, however, where the nonparty seeks intervention in a pending case, as here, and "the ultimate relief sought . . . is also being sought by at least one subsisting party with standing to do so." *Id.* (internal quotation and citation omitted). The ultimate relief sought by Professor Volokh is the unsealing of documents in this case, relief that Traynor has requested on multiple occasions before this Court. Furthermore, when a party is seeking to intervene only to modify a protective order or unseal documents, and not to litigate a claim on the merits, "an independent basis of jurisdiction is not required." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). Accordingly, the Court shall consider whether

6

Professor Volokh has established his right to intervene under Rule 24 without first evaluating whether he has established Article III standing.

Rule 24(a) addresses intervention as a matter of right; Rule 24(b) addresses permissive intervention. Although Professor Volokh cites the standards for both types of intervention in his motion, courts considering intervention by nonparties seeking access to judicial records in a civil case have consistently analyzed such requests under Rule 24(b) and the standards for permissive intervention. *See Flynt v. Lombardi*, 782 F.3d 963, 966 (8th Cir. 2015) (finding Rule 24(b) as the proper procedural vehicle for seeking unsealing of judicial records); *AT&T Corp. v. Sprint, Corp.*, 407 F.3d 560, 561–62 (2d Cir. 2005) (same); *Jessup v. Luther*, 227 F.3d 993, 999 (7th Cir. 2000); *San Jose Mercury News*, 187 F.3d at 1110 (same); *also Nat'l Children's Center, Inc.*, 146 F.3d at 1045 (same); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) (same).

The undersigned also finds that Rule 24(b) is the appropriate vehicle for Professor Volokh to seek intervention here, not Rule 24(a)'s standards for intervention as of right. Rule 24(a) requires a direct, substantial, and legally protectable interest in the property or transaction that is the subject of the litigation. *Ross v. Marshall*, 456 F.3d 442, 443 (5th Cir. 2006). Professor Volokh's First Amendment interest in access to the judicial records in this case and the public's common law right of access to the courts are interests that are tangential to the primary subject of this litigation, not an interest Rule 24(a) is designed to protect. The Court should evaluate Professor Volokh's motion under Rule 24(b).

Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.

7

24(b)(1). "[D]espite the lack of a clear fit with the literal terms of Rule 24(b), every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders." *Nat'l Children's Ctr.*, 146 F.3d at 1045 (collected cases omitted). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Court must therefore first consider three factors in deciding whether to exercise its discretion to permit Professor Volokh to intervene: (1) the timeliness of his motion; (2) whether he has a claim or defense that shares a common question of law or fact with the parties' dispute; and (3) whether granting the intervention will unduly delay or prejudice the adjudication of this case.

**Timeliness.** A district court considers four factors in determining whether an application for intervention is timely: (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

Attached to Professor Volokh's motion is a sworn declaration, which states that he discovered this case on January 25, 2022. (Volokh Decl. [#117], at 11.) He filed his motion to intervene on February 3, 2022, a little over one week after becoming aware of his potential interest in this case. This minimal amount of time between discovering this case and filing his

8

motion weighs in favor of finding the motion timely. *See Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001) (motion to intervene considered timely where motion to intervene filed 22 days after entry of confidentiality order at issue). *See also Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977) (concluding that "[b]y filing their petition less than one month after learning of their interest in this case, the appellants discharged their duty to act quickly"). As to the other factors, there are no unusual circumstances to consider in evaluating the timeliness of the motion, and there is no prejudice suffered by the parties to this litigation based on the timing of Volokh's filing of this motion. Professor Volokh's motion is timely.

**Common Question of Law or Fact.** Again, for a court to exercise its discretion and permit a party to intervene under Rule 24(b), the potential intervenor must demonstrate that he has a claim or defense that shares with the main action a common question of law or fact. Other circuits have been especially flexible in their interpretation of Rule 24(b)'s claim-or-defense requirement where a potential intervenor seeks intervention for the limited purpose of unsealing judicial records. *Nat'l Children's Ctr.*, 146 F.3d at 1046 (construing Rule 24(b) as a specific avenue for third parties to "contest the scope or need for confidentiality" and to seek "access to materials that have been shielded from public view either by seal or by a protective order"). *See also Beckman Indus.*, 966 F.2d at 474 (where a party is seeking to intervene in a case to unseal judicial records, "there is no reason to require such a strong nexus of fact or law"). Other courts of appeals have found that in such cases, it is the public's interest in the confidentiality of the judicial records that is the "question of law" in common between the parties to the original suit and the would-be intervenor. *Flynt*, 782 F.3d at 967 (citing *Jessup*, 227 F.3d at 999). "The rationale for this exception is simple—such intervenors do not ask the district court to exercise jurisdiction over an additional claim on the merits, but rather to exercise a power that it already

9

has, namely the power to modify a previously entered confidentiality order." *Nat'l Children's Ctr.*, 146 F.3d at 1047.

The Fifth Circuit has similarly construed Rule 24(b)'s "common question" requirement liberally. *Newby*, 443 F.3d at 422. In *Newby*, for example, the Texas Board of Public Accountancy sought to permissively intervene in a civil lawsuit against Enron Corporation and other defendants to obtain court-protected discovery materials for use in its own independent investigation of audit failures at Enron. *Id.* at 418–19. The Fifth Circuit held that this investigation raised questions of law and fact in common with questions in the underlying action, which was a shareholder suit alleging security fraud against Enron, so as to support permissive intervention. *Id.* at 422. District courts in the Fifth Circuit have commented that "[p]ermissive intervention to petition for unsealing of court records is routine," and have found the common-question requirement satisfied where the potential intervenor strictly seeks an adjudication as to whether the court properly sealed documents from public view, not on the merits of any potential claim of the underlying parties. *See, e.g., Estate of Baker by and through Baker v. Castro*, No. H-15-3495, 2020 WL 2235179, at *3 (S.D. Tex. May 7, 2020) (permitting relatives and estate of victim of police shooting to intervene for limited purpose of accessing court-protected filings for use in their own investigation of shootings by Houston police officers).

Equally here, Professor Volokh seeks to intervene simply to ask this Court to consider whether its decision to seal all court records in this case violates the public's right of access to judicial records or the parameters of the First Amendment. The Fifth Circuit's liberal construction of Rule 24(b)'s common-question requirement and the weight of authority among other circuits evaluating this requirement in the context of motions to intervene to unseal court records supports finding a common question of law or fact here.

10

**Delay or Prejudice to the Adjudication of the Parties' Rights.** Finally, Rule 24(b) also requires district courts to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3). There is no reason the intervention of Professor Volokh would unduly delay this litigation, and no party has asserted any specific prejudice that would be caused to the adjudication of this case in responding to Professor Volokh's motion. To the extent Plaintiff argues she will be prejudiced by the disclosure of the facts underlying this litigation and the contents of the legal documents filed in this case, these arguments are more properly addressed as part of the merits issue of whether to grant Professor Volokh's motion to unseal, rather than as part of the Rule 24(b) procedural analysis of whether to grant intervention. *See Parson v. Farley*, 352 F. Supp. 3d 1141, 1150 (N.D. Okla. 2018) (concluding same). No party has identified any unique prejudice that would be caused to the adjudication of this case if Professor Volokh is permitted to intervene. Professor Volokh has therefore established the requirements for permissive intervention—timeliness of his motion, a common question of law or fact, and that no undue delay or prejudice to the adjudication of this case would be caused by permitting the intervention for the limited purpose of evaluating whether to unseal all or part of this case.

**Whether the Court should exercise its discretion and permit the intervention.** Based on the foregoing, Professor Volokh is qualified to permissively intervene in this suit under Rule 24(b). Yet permissive intervention is "wholly discretionary" with the district court, even where there is a common question of law or fact and the requirements of Rule 24(b) are otherwise satisfied. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984) (quoting Wright & Miller, Fed. Practice & Procedure: Civil § 1913 at 551). No party has articulated a basis for denying the requested intervention, aside from opposing the merits of

11

Professor Volokh's argument for unsealing the records in this case. The undersigned therefore respectfully recommends that the District Court permit Professor Volokh to intervene so he can raise the First Amendment and common law arguments against keeping all case records sealed from public view. Granting Professor Volokh's motion to intervene has no bearing on the Court's ultimate resolution of the motion to seal; it merely allows the parties the opportunity to fully brief the common law and constitutional issues related to the sealing of this case from public view.

### III. Motion to Unseal

Professor Volokh seeks the unsealing of the following orders and filings in this case: the Court's order entering a temporary restraining order [#5], the Court's order entering a preliminary injunction [#7], the Court's order sealing all filings in this case [#9], the pleadings [#1, #10, #61, #107], Plaintiff's motion for a temporary restraining order and preliminary injunction [#2], the motions to dismiss and related responses and replies [#19, #21, #22, #23, #39, #40, #66, #67, #71], and the substantive motions and responses regarding the motions related to sealing and unsealing [#8, #32, #48, #49, #110, #112, #113, #114]. Volokh argues there is a presumptive right of public access to judicial records under common law, as well as a First Amendment right of public access to judicial records. He further argues that the presumption of access has not been rebutted here, and the identified documents should be unsealed.

The undersigned will briefly outline these two standards for the benefit of the District Court and the parties. However, the undersigned will not decide the motion to unseal until the District Court has resolved the motion to intervene. Rather, the undersigned will dismiss the pending motion to unseal without prejudice. If the District Court adopts this recommendation

12

and grants the motion to intervene, Professor Volokh may file a renewed motion to unseal that addresses the Court's specific concerns regarding the context of this case.

**A.        First Amendment Right of Access to Judicial Records**

"The First Amendment right of access and the common law qualified right of access differ in significant ways." *United States v. Sealed Search Warrants*, 868 F.3d 385, 390 n.1 (5th Cir. 2017). "The First Amendment right of access stems from the historical practice of opening criminal trials to the public." *Id.* The Supreme Court has thus recognized a First Amendment right of access to criminal trials and related courtroom proceedings. *See Press-Enter. Co. v. Superior Court of California for Riverside Cnty.*, 478 U.S. 1 (1986) (*Press-Enter. II*) (preliminary hearing); *Press-Enter. Co. v. Superior Court of California, Riverside County*, 464 U.S. 501 (1984) (*Press-Enter. I*) (voir dire); *Globe Newspaper Co. v. Superior Court for Norfolk County.*, 457 U.S. 596 (1982) (criminal trial); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (plurality opinion) (criminal trial).

To guide the determination of whether a First Amendment right of access exists in a specific context, the Supreme Court has established a two-part inquiry, which courts have since termed the "experience and logic test": "(1) whether the proceeding has historically been open to the public and press; and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'"[2] *In re Hearst Newspapers, LLC*, 641 F.3d 168, 175 (5th Cir. 2011) (quoting *Press-Enter. II*, 478 U.S. at 8–9); *see also Sullo & Bobbitt, P.L.L.C. v. Milner*, 765 F.3d 388, 392 (5th Cir. 2014). "If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access

---

[2] A second approach considers the extent to which the judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).

13

attaches" and with it a presumption that the proceeding should remain open. *Press-Enterprise II*, 478 U.S. at 9. This presumption may be overcome only by an overriding or compelling interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. *Id.* at 9–10; *Globe Newspaper Co.*, 457 U.S. at 606–07. "The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press–Enter. I*, 464 U.S. at 510.

Neither the Supreme Court nor the Fifth Circuit has extended this First Amendment right of access to criminal court proceedings to recognize a general right of access to judicial documents in civil cases, as advocated by Professor Volokh here. Yet other Circuit Courts of Appeals have applied the experience and logic test in evaluating attempts to limit access to court records and have embraced a qualified First Amendment right of access in the civil context and to judicial documents, not just court proceedings. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014) (applying First Amendment standard to judicial opinion ruling on summary judgment motion); *Lugosch*, 435 F.3d at 120 (finding qualified First Amendment right of access attached to exhibits to summary judgment motion); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (recognizing First Amendment right of access to judicial decisions and documents comprising the basis of those decisions but not to discovery materials not a part of the public record), *superseded on other grounds as recognized by Bond v. Utreras*, 585 F.3d 1061, 1068 n.4 (7th Cir. 2009); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (applying First Amendment standard to documents filed in connection with summary judgment motion). And the Fifth Circuit, reviewing a district court that applied this test to misdemeanor court records, held that the district court did not err in applying this test. *Milner*, 765 F.3d at 393.

**B.  Common Law Right of Access**

"Even absent a finding of a First Amendment right of access, the Supreme Court has articulated a qualified right of access to judicial documents that is born from the common law." *Sealed Search Warrants*, 868 F.3d at 390 n.1.  In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–99 (1978), the Supreme Court recognized that the public has a right "to inspect and copy public records and documents, including judicial records and documents." *Bradley on Behalf of AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020) (citing *Van Waeyenberghe*, 990 F.2d at 848).  "This right promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness, and serves as a check on the integrity of the system. *Bradley*, 954 F.3d at 224 (internal quotation and citation omitted).  However, the public's common law right of access to judicial records is not absolute; it is a presumption. *Id.* at 225.

The Fifth Circuit has neither assigned a particular weight to this presumption nor interpreted the presumption in favor of access as creating a burden of proof. *Id.*  "Every court has supervisory power over its own records and files," and public access has been limited or denied "where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598.  "For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not 'used to gratify private spite or promote public scandal' through the publication of 'the painful and sometimes disgusting details of a divorce case.'" *Id.* (quoting *In re Caswell*, 18 R.I. 835, 836 (1893)).  "Notwithstanding, there are well-recognized situations in which the seal may and should be used." *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987).

15

Nonetheless, the Fifth Circuit has cautioned that a district court's discretion to seal judicial records is "to be exercised charily." *Fed. Savings & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987). The "default expectation is transparency that what happens in the halls of government happens in public view. Americans cannot keep a watchful eye, either in capitols or in courthouses, if they are wearing blindfolds." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure." *Van Waeyenberghe*, 990 F.2d at 848. The presumption in favor of public access to judicial records is one of the interests to be weighed in such balancing, along with the relevant facts and circumstances of the particular case. *Nixon*, 435 U.S. at 599, 602.

The Fifth Circuit has instructed district courts evaluating whether to seal judicial records to undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure. *Binh Hoa Le*, 990 F.3d at 419. Sealings must be explained "at a level of detail that will allow for [appellate] review." *Id.* A court abuses its discretion if it makes no mention of the presumption in favor of public access to judicial records and fails to articulate any reasons that would support sealing. *Id.*

**C.     Unique Context of this Case**

This case alleges the invasion of privacy arising out of the posting of private and sexually explicit images of Plaintiff on the internet. Numerous states, including Texas, have enacted so-called "revenge-porn statutes" criminalizing the type of conduct alleged in this case and have codified corresponding statutes imposing civil liability. *See* Tex. Pen. Code § 21.16; Tex. Civ. Prac. & Rem. Code § 98b.002. Although Plaintiff has not pleaded this case under the Texas revenge-porn statute, the conduct at issue implicates the same privacy interests and issues. In

16

such cases, the privacy interests at stake are of a greater magnitude than those cases in which embarrassing facts may merely be a tangential part of the litigation. Furthermore, First Amendment and common law interests in a right of access may be less compelling when viewed against a backdrop of a plaintiff's attempt to vindicate a right to privacy that will itself be undermined or thwarted by the mere filing of a lawsuit if all (or most) filings and proceedings in that lawsuit must be publicly disclosed.

In light of the unique circumstances of this case, any renewed motion to intervene filed by Professor Volokh, and any response in opposition, should address both the common law and more rigorous First Amendment standards, how they intersect in the context of a case where the plaintiff is seeking to remedy harms caused by the nonconsensual dissemination of intimate, sexual images and to prevent wider disclosure of those images, and propose specific suggestions as to how the Court should balance the competing interests at issue. In light of the Fifth Circuit's directive that district courts engage in a case-by-case and document-by-document analysis of the right of access, the parties should address the specific documents Professor Volokh seeks to have unsealed, whether there is an effective but less restrictive means of protecting Plaintiff's privacy interests aside from the wholesale sealing of this case, and whether the public's common law or First Amendment right of access extends to all of the documents identified by Professor Volokh in his motion to unseal. Finally, Professor Volokh may not blog or write about this case until any renewed motion to unseal has been granted.

## IV. Conclusion and Recommendation

Having considered Professor Volokh's motion, the responses and reply thereto, the record, and the governing law, the undersigned recommends that *Pro Se* Motion of Eugene

17

Volokh to Intervene [#117] be **GRANTED** for the limited purpose of allowing Professor Volokh to move to modify the sealing order in this case.

**IT IS ALSO HEREBY ORDERED** that Professor Volokh's Motion to Unseal [#117] is **DISMISSED WITHOUT PREJUDICE** pending the District Court's final decision on the motion to intervene.

**IT IS FURTHER ORDERED** that if the District Court accepts the recommendation to grant the motion to intervene, Professor Volokh is directed to file any renewed motion to intervene within **14 days** of the District Court's order granting the motion.

### V.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained

18

in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 18th day of July, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE